UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GRANT BOYD,                                    )
          Plaintiff,                            )
                                   )
     v.                                        )          Civil Action
                                   )          No.  05-10873-RWZ
MIKE AUSTIN,                                   )
Plymouth County Sheriff's Department,  et al.,  )
          Defendants.                           )

**DEFENDANTS ANTHONY DICHIO AND  U.S. MARSHALS SERVICE'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Plaintiff, Grant Boyd, is a defendant in a federal criminal case.  He brings this civil action

against various state defendants, the United States Marshals Service (USMS), and Anthony

Dichio, the United States Marshal for the District of Massachusetts (USM Dichio) to complain

about his confinement in state correctional facilities.  Among other things, plaintiff seeks to have

this Court "compell [sic] the US Marshals Service to transfer plaintiff to Dedham House of

Corrections." Amended Complaint (Am. Compl.) ¶ 31.  Plaintiff  also seeks $150,000 in punitive

damages against USM Dichio and John Doe (presumably an Assistant United States Marshal) for

a purported contractual violation and $80,000 for legal fees. Am. Compl.  ¶¶ 32, 36.   His

complaint(s)[1] should be dismissed for failure to state a claim and lack of subject matter

jurisdiction.

---

[1] This matter involves two pro se complaints.  Both suffer from the same deficiencies and
should be dismissed as a matter of law.  Plaintiff's Complaint, which requests similar relief as
the Amended Complaint, contains no factual allegations against the federal defendants. See
Complaint ¶¶ 29, 30, 32, and 39.

## FACTS

Plaintiff alleges that his civil and constitutional rights were violated while he was in the custody of the (USMS) at the Plymouth County, Massachusetts Correctional Facility (PCCF). Specifically, he contends that on January 3, 2005, he was placed in administrative segregation at the PCCF and denied access to a law library. Am. Compl. ¶¶ 3, 9. He also alleges that he was transferred from PCCF to the Massachusetts Correctional Institution because of his request for access to the law library and legal support. Complaint ¶¶ 24, 25, 27 and 28. Plaintiff named as a defendant, among others, USM Dichio. Am. Compl. ¶ 3. USM Dichio has been named in both his official and individual capacities. Id.

Plaintiff was arrested on December 31, 2004, by members of the Boston Police Department pursuant to a federal arrest warrant issued in the District of Massachusetts for possession with intent to distribute methamphetamine. See United States v. Grant Boyd, Criminal Docket No. 05-10037-GAO. On January 3, 2005, plaintiff was remanded to the custody of the USMS and placed at the PCCF. See Affidavit of Cathy Lynch (Lynch Aff.) (attached as Exhibit 2) at ¶ 4.[2] On March 22, 2005, he was transferred to the Massachusetts Correctional Institution, where he currently remains awaiting trial. Am. Compl. ¶ 24.

Upon his placement at the PCCF on January 3, 2005, plaintiff made a request to the PCCF to be placed in protective custody because he is a former corrections officer. See Affidavit of Michael Austin (Austin Aff.) (attached as Exhibit 1) at ¶ 3. Based on this request, the PCCF

---

[2] Defendant has attached three declarations. These attachments do not transform this motion from a Rule 12 motion to dismiss to a Rule 56 motion for summary judgment. See Gonzalez v. United States, et al., 284 F.3d 281, 287 (1st Cir. 2002). The government will file a signed copy of the Lynch affidavit as soon as it receives same.

placed plaintiff in administrative segregation.  Id. at ¶ 4.  However, during his first week in

segregation, plaintiff complained to the PCCF that he was not receiving enough law library time.

Am. Compl. ¶ 9.  Cathy Lynch of Inmate Legal Services was assigned to assist plaintiff with his

requests.  See Lynch Aff. ¶ 4.  Ms. Lynch responded to over 30 requests from plaintiff between

January 3, 2004, and March 22, 2005.  Id.

Plaintiff appears to seek both injunctive relief in the form of this Court ordering his

transfer to a different institution and money damages for some sort of alleged contractual

violation.


## ARGUMENT

A pro se complaint should be read with an indulgent, not a hypercritical, eye.  Haines v.

Kerner, 404 U.S. 519, 520 (1972).  But, "a petitioner who elects to proceed pro se must comply

with the applicable procedural and substantive rules of law."  Lefebre v. C.I.R., 830 F.2d 417,

419 (1st Cir 1987).  Thus, even a pro se plaintiff must satisfy basic pleading requirements and

"set forth factual allegations, either direct or inferential, respecting each material element

necessary to sustain recovery under some actionable legal theory."  Gooley v. Mobil Oil Corp.,

851 F.2d 513, 515 (1st Cir. 1988); accord Dewey v. University of New Hampshire, 694 F.2d 1, 3

(1st Cir. 1982).  Courts have consistently held that conclusory, vague or general allegations are

insufficient.  See e.g., Dewey, 694 F. 2d at 3; Kadar Corp. v. Milbury, 549 F.2d 230, 233 (1st

Cir. 1977).  Even under this liberal examination, plaintiff's complaint must be dismissed

pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

3

**A.  This Court Lack Subject Matter Jurisdiction**

To the extent that plaintiff seeks to sue USM Dichio in his individual capacity, he has not

alleged any facts which suggest that any action taken by USM Dichio rises to the level of a

constitutional violation.  This Court does not have subject matter jurisdiction against individual

federal officials unless such allegations are before it.  See Siegert v. Gilley, 500 U.S. 226, 232

(1991). For example, plaintiff has not alleged - as he must - that USM Dichio participated

personally in any of the alleged unconstitutional actions nor has he alleged a causal connection

linking USM Dichio to the purported wrongs he has suffered.  See Estelle v. Gamble, 429 U.S.

97, 104 (1976); Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).[3]

To the extent that plaintiff seeks to sue the USMS, he has not exhausted his

administrative remedies as required by the Prison Litigation Reform Act of 1995 (PLRA),  Pub.

L. No. 104-134, 1996 HR 3019, Section 7(a), codified at 42 U.S.C. § 1997e(a) .  See Affidavit of

Gerald M. Auerbach (attached as Exhibit 3) at  ¶ 5; Porter v. Nussle, 534 U.S. 516, 527 (2002)

(all prisoners seeking redress for circumstances of imprisonment are required to exhaust

administrative remedies);  Booth v. Churner, 532 U.S. 731, 736 (2001) (same); Medina-Claudio

v. Rodriguez-Mateo, 292 F. 3d 31, 35 (1st Cir. 2002) (§1983 action dismissed because inmate

failed to exhaust administrative remedies.).

In addition, this Court does not have jurisdiction in this case over claims for money

damages against the United States.  Plaintiff seeks punitive damages against USM Dichio in his

---

[3] The government notes that the doctrine of qualified immunity also bars recovery of
damages against USM Dichio.  The plaintiff does not set forth any specific allegations against
USM Dichio - let alone any allegations that violate clearly established law.  Mitchell v. Forsyth,
472 U.S. 511, 524 (1985); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

4

official capacity, Am. Compl. ¶ 36, which is the equivalent to seeking money damages against

the United States itself.  Dugan v. Rank, 372 U.S. 609, 620 (1963).  Because the government has

not waived sovereign immunity for purposes of obtaining money damages in civil rights cases,

plaintiff's claim cannot be sustained.  Fed. Dep. Ins. Corp. v. Meyer, 510 U.S. 471, 484 (1994);

see Bolduc v. United States, 402 F.3d 50, 56 (1st Cir. 2005) ("Federal constitutional or statutory

law cannot function as the source of FTCA liability.").

Further, to the extent plaintiff seeks to have this Court order his transfer to another

institution, he cannot obtain this relief.  United States v. Serafini, 233 F.3d 758, 778 n.23 (3d Cir.

2000) ("a district court has *no* power to *dictate* or *impose* any place of confinement . . .")

(emphasis in original); cf. McKune v. Lile, 536 U.S. 24, 39 (2002) ("It is well settled that the

decision where to house inmates is at the core of the prison administrators' expertise.").


**B.  Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted.**

Plaintiff's complaint makes no specific allegations against the USMS or its agents.  His

allegations chiefly deal with treatment at state correctional facilities and appear to focus on

access to legal materials, placement in administrative segregation, and transfer to a different

institution.  The USMS contracts with local jails to house inmates and is not responsible for the

day-to-day operations of those facilities.  Logue v. United States, 412 U.S. 521, 530 (1973).

Only in exceptional circumstances can the USMS be held liable for constitutional violations in

local jails.  See Jordan v. Doe, 38 F.3d 1559, 1564-66 (11th Cir. 1994) (USMS not liable under 8th

Amendment for conditions in local jail absent court order finding constitutional violations at

local jail).

Nothing in plaintiff's complaint even remotely rises to the level required to sustain a cause of action. A pretrial detainee's right to challenge the general conditions of his confinement is grounded in the Due Process Clause of the Fifth Amendment, and courts borrow the Eighth Amendment standard of "deliberate indifference" when determining whether a pretrial detainee has stated a viable cause of action for prison conditions, and require that a plaintiff show a serious deprivation of basic human needs and a deliberate indifference to prison conditions by prison officials. Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996); see Wilson v. Seiter, 501 U.S. 294, 302 (1991); Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Bell v. Wolfish, 441 U.S. 520, 535 (1979). Thus, plaintiff must first show that the alleged deprivation of the basic human need was objectively "sufficiently serious," and second, that subjectively "the officials act[ed] with a sufficiently culpable state of mind." Wilson, 501 U.S. at 298; Hudson v. McMillian, 503 U.S. 1, 6 (1992); Estelle v. Gamble, 429 U.S. at 104.

Further, "[i]n assessing claims that conditions of confinement are cruel and unusual, the court must bear in mind that their inquires 'spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention 'facility.'" Rhodes, 452 U.S. at 351, quoting, Bell, 441 U.S. at 539. Additionally, penological concerns are legitimate factors in assessing claims of unconstitutional conditions. Gregg v. Georgia, 428 U.S. 153, 183 (1976). Finally, plaintiffs bear the burden of producing, even at the summary judgment stage, "specific nonconclusory factual allegations" of an improper motive. Crawford-El v. Britton, 523 U.S. 574, 598 (1998).

A constitutionally protected liberty interest may be created when state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). However, when an inmate fails to establish that the subject condition was significantly harsher than what would be expected given the ordinary day-to-day occurrences in that facility and does not allege that the conditions under which he was housed differed in any material way from those imposed upon other prisoners in the same facility, he fails to raise a due process challenge and has failed to state a claim for the violation of any constitutionally protected right. Jackson v. Meachum, 699 F.2d 578, 581 (1st Cir. 1983); Beverati v. Smith, 120 F.3d 500, 504 (4th Cir.1997).

In this case, plaintiff requested separation from the general jail population because he is a former correctional officer. See Austin Aff. ¶ 3. His request was granted and he was held in administrative segregation at PCCF. Id. at ¶ 4. Despite having restricted time out of their cells, prisoners so confined can gain access to legal materials through the jail's legal department. Plaintiff availed himself of the legal services of the PCCF and made in excess of 30 requests to the legal department at that facility. See Lynch Aff. ¶ 4. Moreover, plaintiff admits in his complaint that he was given access to legal materials. Am. Compl. ¶¶ 10, 11, 12, 13, 15. He alleges that he was transferred to a different facility and not given access to his legal materials, yet he was able to file an Amended Complaint and various other ex parte pleadings in this case.[4] Accordingly, he has failed to establish a constitutional claim.

---

[4] Plaintiff seems to be unhappy with his treatment at MCI Cedar Junction, where he is currently house, and yet he does not name any defendant from that institution. Plaintiff appears to allude to violations at that facility, at least in his processing, in Paragraph 24 of the Amended Complaint; however, these do not form the basis of his overall complaint and, in any event, do not rise to the level required to state a claim against the USMS or any of its employees.

Plaintiff complains also about his law library access but has not alleged any injury as a result.   Jail authorities must provide prisoners with access to adequate law libraries or adequate assistance from persons trained in the law.  Bounds v. Smith, 430 U.S. 817, 820-21 (1977). Here, as mentioned above, plaintiff was given access to those materials and the services of a paralegal.  See Lynch Aff. ¶ 4.  Certainly, access to these services satisfies the requirement of access to the courts.  See Carter v. Fair, 786 F.2d 433, 435 (1st Cir. 1986) (jail had no duty to provide law library because inmate legal assistance program provided sufficient access to the courts); Cruz v. Hauck, 515 F.2d 322, 331 (5th Cir. 1975)("access to the courts may be satisfied either by availability of legal materials, by counsel, or by any other appropriate device of the State").  Thus, plaintiff has failed to state a claim.

## CONCLUSION

For all of the above reasons, the USMS and USM Dichio respectfully request that this

Court dismiss all claims against them with prejudice.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

/s/Eugenia M. Carris
Eugenia M. Carris
Assistant U.S. Attorney
Office of the U.S. Attorney
John Joseph Moakley U.S. Courthouse
1 Courthouse Way - Suite 9200
Boston, MA 02210
June 27, 2005                           (617) 748-3282

## CERTIFICATE OF SERVICE

I certify that service of the above has been made by first-class mail on this 27th day of June, 2005
upon:

Grant Boyd, pro se,
        MCI-Walpole-Block 4, P. O. Box 100, S. Walpole, MA 02071.

Plymouth County Sheriff's Department Headquarters,
        24 Long Pond Road, Plymouth, MA 02360

Commonwealth of Massachusetts, Department of Correction Headquarters,
        50 Maple Street, Suite 3, Milford, MA 01757.

/s/Eugenia M. Carris
Eugenia M. Carris
Assistant U.S. Attorney

# EXHIBIT 1

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.                          SUPERIOR COURT DEPARTMENT
                                       C.A. 05-10873-RWZ

Grant Boyd,          Plaintiff        )
                                      )
                                      )
v.                                    )
                                      )
Mike Austin, Richard Cardinal, Cathy  )
Lynch, Thomas Hannon, Michael Neri,   )
Brian Gillen, Joseph McDonald, Edward )
O'Donnell, Rhiane Kohl, Kathleen      )
Dennehy, and Anthony Dichio,          )
                  Defendants          )
                                      )

AFFIDAVIT

I, Michael Austin, Caseworker at Plymouth County Correctional Facility, do hereby depose and state the following:

1.      I am a Caseworker at the Plymouth County Correctional Facility;

2.      That on January 6, 2005 I was asked to conduct an interview of Inmate Grant Boyd;

3.      That during my interview with Inmate Grant Boyd on January 6, 2005, I determined that Grant Boyd was a former Essex County Correction Officer who was concerned for his safety in general population and as a result requested segregation;

4.      That in addressing safety concerns of Inmate Grant Boyd, I determined that Mr. Boyd should be classified to Unit A-I Protective Custody.

Signed under the pains and penalties of perjury, this 24th day of June, 2005.

_____
Michael Austin - Caseworker

# EXHIBIT 2

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.                                  SUPERIOR COURT DEPARTMENT
                                               C.A. 05-10873 RWZ

| | |
|---|---|
| Grant Boyd,         Plaintiff | ) <br> ) <br> ) |
| v. | ) <br> ) |
| Mike Austin, Richard Cardinal, Cathy <br> Lynch, Thomas Hannon, Michael Neri, <br> Brian Gillen, Joseph McDonald, Edward <br> O'Donnell, Rhiane Kohl, Kathleen <br> Dennehy, and Anthony Dichio, <br>                     Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

AFFIDAVIT


I, Cathy Lynch, Paralegal in Inmate Legal Services, do hereby depose and state
the following:

1.  Inmates at Plymouth County Correctional Facility are entitled to access
    our services in Inmate Legal Services via Inmate Request Slips, in which
    they list case cites and request printed cases, or they may request other
    informational materials for their personal use or knowledge;

2.  Inmate Legal Services provides copies of legal materials as requested by
    the inmates on said Inmate Request Slips;

3.  Inmate Legal Services maintains a Daily Log that is kept in order to keep
    track of the services provided to the approximately 1,600 inmates that we
    service on a daily basis;

4.  Inmate Legal Services provided services to Inmate Grant Boyd from the
    time period of January 3, 2005 (date he was booked in to the facility)
    through March 22, 2005 (date he was transferred out of the facility).
    Below is a chronological list of services provided to Inmate Grant Boyd.
    For clarification, "case law" means we responded to the inmate's request
    to print out a specific case cite; the term "copies" means that the inmate
    has been provided with Xerox copies of the materials requested.  Inmates
    may also request specific statutes (both federal and state) or Policies and

Procedures for this institution, or supplies such as envelopes or certified mail receipts:

- January 14, 2005     case law
- January 18, 2005     case law (2 request slips)
- January 20, 2005     case law
- January 25, 2005     case law
- January 27, 2005     case law
- January 28, 2005     case law
- February 1, 2005     case law (3 request slips)
- February 2, 2005     case law
- February 3, 2005     case law
- February 7, 2005     copies and case law
- February 9, 2005     case law
- February 10, 2005     case law
- February 11, 2005     case law (2 request slips)
- February 15, 2005     copies and case law
- February 16, 2005     copies
- February 17, 2005     case law
- February 23, 2005     case law (2 request slips)
- February 24, 2005     case law
- February 25, 2005     case law
- February 28, 2005     case law

- March 2, 2005     case law (3 request slips)
- March 3, 2005     case law
- March 4, 2005     various Policies & Procedures; Revocation of Power of Attorney Form
- March 7, 2005     case law
- March 9, 2005     Federal Civil Rules; Federal Local Rules; Various USCA's
- March 10, 2005     MGL c. 127 Index
- March 11, 2005     Sent 4 certified mail forms and 4 copies of Legal letter
- March 14, 2005     copies
- March 18, 2005     copies
- March 21, 2005     case law

Signed under the pains and penalties of perjury, this ___ day of June, 2005.

_____
Cathy Lynch – Paralegal
Inmate Legal Services

# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GRANT BOYD, | ) |
| | ) |
| PLAINTIFF, | ) |
| VS. | )  CIVIL ACTION NO. 05-10873 |
| | ) |
| MIKE AUSTIN, ET AL. | ) |
| | ) |
| DEFENDANTS. | ) |
| | ) |

## DECLARATION OF GERALD M. AUERBACH

I, Gerald M. Auerbach, declare the following to be true and correct:

1.  I am the General Counsel for the United States Marshals Service (USMS), Department of Justice, Arlington, Virginia and am responsible for overseeing the administrative tort claims received by this office.

2.  This office is the custodian of agency records relating to the filing, evaluation, and disposition of administrative claims presented to the USMS under the Federal Tort Claims Act (FTCA). All such claims are forwarded to the Office of General Counsel for disposition.

3.  As a routine business practice, this office maintains a record of each such claim. The claims are indexed by claimant.

4.  On June 25, 2005, this office searched the FTCA claim records to determine whether a claim was presented to the USMS by plaintiff arising out of the incident described in the complaint.

5.  The review of the FTCA claim records did not reveal any FTCA claims presented to the USMS by plaintiff arising out of the incident described in the complaint.

Gerald M. Auerbach
General Counsel
United States Marshals Service Headquarters
Washington, D.C. 20530-1000
(202) 307-9054

Executed on: June 25, 2005