UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOYD, GRANT

v.                                        CA: 05-10873-RWZ

AUSTIN, MIKE et al.,

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO USMS
### DEFENDANTS' MOTION TO DISMISS

The Defendants at the United States Marshal's Service (USMS) ask
for a dismissal under FED.R.CIV.P § 12(b)(1) & 12(b)(6) stating
that Plaintiff failed to meet basic pleading requirements or
did so incorrectly.  The Plaintiff asks the court to be generious
in its evaluation of the Platiff's complaint given that the
crux of the Plaintiff's claims focus on being denied legal
materials.

There is precedent for this, Pro Se litigant's complaint
is held to a less strict standard then standards applied to
complaints drafted by lawyers; thus it is appropriate to dismiss
only if it is beyond a doubt that Plaintiff can prove no set
of facts to support his claim.  Akao v. Shimda 832 F.2d 119,
cert denied 108 S.Ct 1301; see also Sidebothem v. Robinson
216 F.2d 816, 826 (a dismissal without leave of the court should
not be granted where there is a possiblity of a good complaint
being filed.)

Additionally under FED.R.CIV.P § 12(b)(6) the allegations
in the complaint are to be taken as true for the purposes of
a motion to dismiss.  Such a motion should only be granted if
it is clear that no relief could be granted under any set of
facts that could be proved consistant with the allegations.
Hishon v. King & Spalding 467 US 69, 73.

I

## USMS DEFENDANTS' RESPONSIBLITY

The USMS claims it is not responsible for its obligations to ensure the rights of Detaines placed into their care. They say local jails are responsible alone for the USMS' obligations because a contract exists between local jails and the USMS, to provide detention services and house detaines in local jails. They state they are not responsible for the day-to-day opperations at local jails and if violations occure to inmate's rights that they are not responsible or liable.

The courts disagree with this view, this view is also not consistant with Article XIII of the Intergovernmental Services Agreement (IGA) which makes provisions for USMS Inspectors to inspect local facilities housing detaines. (See Exhibit  $\mathcal{A}$  ) If the provision exists in the contract signed between PCSD and the USMS then the USMS is acknowleding  its responsiblities. To proclaim in their memorandum in support of motion to dismiss that the USMS is not responsible goes to show the existance of a general behavior that makes it ok to turn a blind eye to Third party contractor compliance which must be grounded in an agency policy or custom, at least in the local office of the USMS.

The Ninth Circut in Gomez v Vernon 255 F.3d 1118 ruled that an agency policy or custom may be found in an affirmative proclmation of policy or in the failure of an supervisory official to take remedial steps after the violation.

The USMS' Defendants took the remedial step of punishing the victim-plaintiff for seeking judicial redress/oversite. If this was a protective step to remove a prisoner-plaintiff

2

from the facility he is sueing then why did the Defendants transfer the plaintiff to another defendtant's facility?

The USMS did not investigate nor take corrective action to stop violations, they turned a blind eye to the the violations and punished the victim.

If a policy or custom established a general rule of behavior even in the absence of the policy maker, the policy maker is responsible in their official capasity for the alleged violations of Constitutional rights. Gomez Id.

The USMS Defendants in failing to investigate or take corrective action show that a policy or custom exists that encourages a lack of oversite or a deliberate indifference to the rights of detaines. "The department's failure to investigate or correct Constitutional violations supports the Districts Court's finding that there was a policy or custom that lead to violation of inmate's rights." Gomez @ 1127

The Supreme Court ruled a pratice or custom even an informal one can meet the standard for imposing official liability. Monell v. Department of Social Services 436 US 658, 690-91; Webster v. City of Huston 689 F.2d 1220, 1226 (5th Cir); Turpin v. Mailet 619 F.2d 196, 201 (2nd Cir) cert denied 449 US 1016.

Yet the USMS claims no responsiblity because it contracts with local jails for services, even though the USMS established a custom or policy that encourages violations or at th very least encourages a turn a blind eye approach to complaince inspections and investigations.

Chief Judge Caffey in Blake v. Berman 598 F.Supp 1081, ruled by 1980 the Constitutional right of access to the courts had been clearly established, the Defendants should have known

3

of Plaintiff's right to access to the courts and their ̶w̶o̶n̶ OWN duty
to help provide for its fullfillment. He goes on to say, the
Defendants cannot contend that they have no duty whatsoever
to ensure Plaintiff's rights by transfering Plaintiff to another
entity.

The First Ciruct in Rich v. Zitnay 644 F.2d 41,43 ruled
"correction authorities may not avoid obligations to ensure
access to the courts by transfering inmates to prisons opperated
by another entity." Is this not, exactly what the USMS is claiming?

The Supreme Court in West v. Atkins 487 US 42, 56 ruled
that contracting out prison services to Third Party vendors
does not relieve a State of its Constitutional duty to provide
adequate treatment to those in its custody, ̶n̶e̶ NOr are inmates
precluded from bringing a §1983 claim against the State to
vindicate those Constitutional rights.

The USMS cannot be allowed to claim they are not responsible
when clearly the courts are ruling that they cannot avoid their
obligations by contracting with local jails to house and provide
services to detaines, as such the Defendants are responsible
in their Official capasity for violations of clearly established
inmate rights that occured because of an agency policy or custom
that created an enviroment or behavior at 3rd party locations
and within the USMS that established a deliberate indifference
to their obligations to ensure complaince and inmate rights.

The USMS' ̶w̶o̶n̶ OWN statements proclaiming that they are not
responsible shows an acquiescence to allow contractor violations
to go unchecked, uninvestigate and uncorrected. This deliberate
and reckless indifference to Constitutional violations even
after knowledge of the violations, results in the Defendants

being responsible in their Individual capasities.  Martin v.
Ezcagu 816 F.Supp 20, 26

Even if Soverign immunity precludes the award of monitary
damages from the Defendants in their Official capasities the
Plaintiff has asked the court to award other relief as it feels
approperate.  Notwithstanding, Plaintiff contends the USMS
Defendants are responsible in their individual capasities and
for the above reasons are not covered by immunity defenses.

The Plaintiff moves the court to deny Defendant's motion
to dismiss for the above reasons.

## Prison Litigation Reform Act (PLRA) Exahustion Requirement

The PLRA amended 42 USC § 1997(e)(a) and now requires a
prisoner to exhaust "such administrative remedies as are available"
before suing over conditions.

Failure to exhaust d̶e̶e̶ does not deprive the Court of Subject
Matter Jurisdiction, as the Defendants claim.  Mercer v. Rodriquez
83 Conn App 251, 849 A.2d 886 (2004); Steel v. Federal Bureau
of Prisons 335 F.3d 1204 (10th Cir 2003) cert denied 2004 WL
2154328 (US 2004)

The Prisoner-Plaintiff contends he filed a grievence and
appealed to the Assistant Deputy Superintendent Neri, Deputy
Superintendant Gillen and Sheriff McDonald as required by the
P.C.C.F Inmate Handbook (See Exhibit  B  3 pages from handbook)
prior to filing suit. (See Exhibit  C  - response from Gillen)

So long as prisoner presents his grievence to prison officials
and appeals through available procedures the inmate has
exhausted his adminsitrative remedies and prison authorities
decison not to address grievence shall not bar Prisoner from

6

bringing suit. Thomas v. Wollum 337 F3d 720 (2003) Fed App 0252P
(6th Cir 2003).

The USMS never provided Plaintiff with a Federal Detainee's
rights book or Detainee's handbook, Defendants at PCSD refused
to give Plaintiff a copy of the USMS IGA to assist the Plaintiff
in address his grievences with the USMS, on top of refusing to
give Plaintiff access to the materials needed to conduct research
to identify the individuals to address his grievence to. However,
the USMS proclaim in their Memorandum in Support that they are
not responsible for the day-to-day opperations of local jails
as such Plaintiff doubts they would address the grievence since
they defer to the local jails.

So long as there is a good faith bona fide effort to comply
with exhaustion requirement Prisoner is not bared from bringing
suit.  Zolicoffer v. Scott 55 F.Supp 2d 1372, 1375 aff'd 255
F.3d 440 (11th Cir 2001); Nyhuis v. Reno 204 F3d 65 (3rd Cir
2001).

Plaintiff claims he put forth a bona fide effort to exhaust
all adminsitrative remedies to receive relief before filing
for judicial redress in Plymouth County Superior Court.

## RETALITATION CLAIM

The USMS and PCSD both fail to deny or address Plaintiff's claim
of retalitation, as they have with other claims made by Plaintiff.

Plaintiff contends that a casual connection exists between
the filing for judicial redress (a protected speech right) and
the transfer to Walpole, which occured less then 24 hours after
officially notifying the Defendants of the law suit.

The Courts have held that for a Plaintiff to sustain a retalitation claim, the Plaintiff must show a casual connection between the protected speech right and the adverse action. Morales v. Mackalm 278 F.3d 126 (2nd Cir 2002)

To plea adverse action the Plaintiff must allege, as Boyd does, that the Defendants subjected him to conduct that would deter a similar individual of ordinary firmness from exercising his Constitutional rights. Bart v. Telford 667 F.2d 622, 625 (7th Cir); Allah v. Seiverling 229 F.2d 220 (3rd Cir 2000); Crawford-El v. Britton 951 F.2d at 826 (approving the Bart Standard found in Bart v. Britton for the prison context).

The adverse action that Boyd claims **was** the need to terminate his civil action against the DOC Defendants (See Exhibit $D, E$ ) and the attempt to terminate the entire suit (See Exhibit $F, G$ ) in response to the actions of the Defendants.

The Defendants in footnote 4 of the Memorandum in Support state "Plaintiff seems to be unhappy with his treatment at MCI Cedar Junction where he is currently housed and yet he does not name any defendants from that institution. Plaintiff appears to allude to violations at that facility..." (See Exhibits __H__ )

Plaintiff has not and will not name defendants from MCI Cedar Junction for fear of more retalitatory actions as they where involved in the events that lead to my terminating the action against DOC Officials. Plaintiff has learned and is now very fearful of seeking judicial redress for unconstitutional actions that occure at the hands of his jailers. The Plaintiff has included these allegations of violations at MCI Cedar Junction to show a pattern of acceptable conduct at local jails and

$\mathcal{G}$

within the USMS that might help establish a pattern of deliberate indifferance to the conditions at 3rd party locations and violations of inmate rights that occure at local jails.

Additionally, on June 27, 2005 the Plaintiff was transported by the DOC to the US Federal Court at the request of the USMS. When Plaintiff was returned to Walpole he was served with the USMS Motion to Dismiss. Plaintiff contacted his lawyer and found out that he was not scheduled for any appearences or meetings that would explain this transportation to US Federal Court other then an attempt by the USMS to encourage Plaintiff to drop them from the action. This goes to a showing of relative retalitory conduct and to the existance of an agency policy or custom, even an informal one, that makes it acceptable to punish detaines for exercising a First Amendment Right to seek judicial oversite.

Plaintiff begs the court to see this conduct for what it is, an attempt to intimidate and harrass a victim and make him fearfull of seeking oversite for repetative violations. Plaintiff is truly fearful of what will occure if he continues this lawsuit while in the custody of the USMS.

Plaintiff contends he has established a casual connection between a protected First Amendment right and an advers action related to the retalitatory actions taken by the Defendants. As such Plaintiff submits that this claim survives the motion to dismiss.

## CONCLUSION

Plaintiff asks the court to deny the Defendants at the USMS' motion to dismiss for all of the above reasons.

Respectfully Submitted,

$8/10/05-$

Grant Boyd, Pro Se
PO Box 100 – Block 4
South Walpole, MA 02071

Exhibit A

b2

United States Department of Justice
United States Marshals Service

**Intergovernmental Service Agreement**
*Housing of Federal Prisoners*

Page __1__ of __11__

| 1. AGREEMENT NUMBER | 2. EFFECTIVE DATE | REQUISITION/PURCHASER/REQUEST NO. | 4. CONTROL NO. |
|---|---|---|---|
| 38-99-0047 | 12 / 01 / 98 | 063-96 | |

| 5. ISSUING OFFICE | 6. GOVERNMENT ENTITY | FACILITY CODE(S) |
|---|---|---|
| UNITED STATES MARSHALS SERVICE PRISONER OPERATIONS DIVISION IGA SECTION 600 ARMY NAVY DRIVE ARLINGTON, VA 22202-4210 | NAME AND ADDRESS *(Street, city, county, State and ZIP code* — **Plymouth County Sheriff's Department Obery Street Plymouth, MA 02360** | 1CK |

| 7. APPROPRIATION DATA |
|---|
| 15X1020 |

Contact Person    **Peter Forman, Sheriff**
Area Code & Telephone No. ► **(508) 746-0610**

| 8. ITEM NO. | 9. SUPPLIES/SERVICES | 10. QUANTITY | 11. UNIT | 12. UNIT PRICE | 13. AMOUNT |
|---|---|---|---|---|---|
| | This agreement is for the housing, safekeeping and subsistence of federal prisoners including court transportation and medical guard services, in accordance with the contents set forth herein. | ESTIMATED USMS PRISONER DAYS 60,000 | PDs | PER DIEM RATE $74.24 | ESTIMATED ANNUAL PAYMENT $4,454,400.00 |
| | **The Intergovernmental Agreement Number J-A38-M-946 is canceled and the new number is stated in Block No. 1** | ESTIMATED GUARD HRS 2,500 | GHs | $18.47 | $46,175.00 |

| 14. | | 15. NAME AND TITLE OF PERSON(S) AUTHORIZED TO SIGN OFFER |
|---|---|---|
| AGENCY CERTIFYING | *To the best of my knowledge and belief, data submitted in support of this agreement is true and correct, the document has been duly authorized by the governing body of the Department or Agency and the Department or Agency will comply with ALL PROVISIONS SET FORTH HEREIN.* | _____ (Signature)  Date _____  Name (Type or Print)  Title _____ (Signature)  Date _____  Name (Type or Print)  Title |

| 16. TYPE OF USE | 17. PRISONER TYPE TO BE INCLUDED | 19. *This Negotiated Agreement is Hereby Approved and Accepted for* |
|---|---|---|
| ☐ Hold Over ☒ Regular Support ☐ Seasonal Support ☐ Other | **UNSENTENCED** ☒ Adult Male ☐ Adult Female ☐ Juvenile Male ☐ Juvenile Female ☒ Aliens | **SENTENCED** ☒ Adult Male ☐ Adult Female ☐ Juvenile Male ☐ Juvenile Female ☐ Work Release ☐ YCA Male ☐ YCA Female | THE UNITED STATES OF AMERICA BY DIRECTION OF THE DIRECTOR OF THE UNITED STATES MARSHALS SERVICE  BY _____ (SIGNATURE OF CONTRACTING OFFICER) |

**18. LEVEL OF USE**
☐ Minimum
☐ Medium
☒ Major

| 20. | ANTICIPATED ANNUAL USAGE | | | | 21. NAME OF AUTHORIZING OFFICIAL *(Type or Print)* | 22. DATE SIGNED |
|---|---|---|---|---|---|---|
| | UNSENTENCED | SENTENCED | ALIENS | TOTAL | | |
| No. of Prisoners | | | | | Vicki Lipov | 10, 2, 98 |
| Prisoner Days | 60,000 | | | | | |
| Guard Hours | 2,500 | | | | | |

PRIOR EDITIONS ARE OBSOLETE AND ARE NOT TO BE USED

FORM USM-241
(Rev. 3/96)

| United States Department of Justice | Intergovernmental Service Agreement | |
|---|---|---|
| United States Marshals Service | *Housing of Federal Prisoners* | Page __1__ of __11__ |

| 1. AGREEMENT NUMBER | 2. EFFECTIVE DATE | REQUISITION/PURCHASER/REQUEST NO. | | 4. CONTROL NO. |
|---|---|---|---|---|
| 38-99-0047 | 12 / 01 / 98 | 063-96 | | |

| 5. ISSUING OFFICE | 6. GOVERNMENT ENTITY | | FACILITY CODE(S) | 1CK |
|---|---|---|---|---|
| UNITED STATES MARSHALS SERVICE<br>PRISONER OPERATIONS DIVISION<br>IGA SECTION<br>600 ARMY NAVY DRIVE<br>ARLINGTON, VA 22202-4210 | NAME AND ADDRESS<br>*(Street, city, county, State and ZIP code)* | **Plymouth County Sheriff's Department**<br>**Obery Street**<br>**Plymouth, MA 02360** | | |
| 7. APPROPRIATION DATA<br>15X1020 | Contact Person<br>Area Code & Telephone No. ► | **Peter Forman, Sheriff**<br>**(508) 746-0610** | | |

| 8. ITEM NO. | 9. SUPPLIES/SERVICES | 10. QUANTITY | 11. UNIT | 12. UNIT PRICE | 13. AMOUNT |
|---|---|---|---|---|---|
| | This agreement is for the housing, safekeeping and subsistence of federal prisoners including court transportation and medical guard services, in accordance with the contents set forth herein. | ESTIMATED USMS PRISONER DAYS<br>60,000 | PDs | PER DIEM RATE<br>$74.24 | ESTIMATED ANNUAL PAYMENT<br>$4,454,400.00 |
| | **The Intergovernmental Agreement Number J-A38-M-946 is canceled and the new number is stated in Block No. 1** | ESTIMATED GUARD HRS<br>2,500 | GHs | $18.47 | $46,175.00 |

| 14. | | 15. NAME AND TITLE OF PERSON(S) AUTHORIZED TO SIGN OFFER |
|---|---|---|
| *AGENCY CERTIFYING* | *To the best of my knowledge and belief, data submitted in support of this agreement is true and correct, the document has been duly authorized by the governing body of the Department or Agency and the Department or Agency will comply with ALL PROVISIONS SET FORTH HEREIN.* | _____ Date _____<br>*(Signature)*<br><br>Name *(Type or Print)* _____ Title _____<br><br>_____ Date _____<br>*(Signature)*<br><br>Name *(Type or Print)* _____ Title _____ |

| 16. TYPE OF USE | 17. PRISONER TYPE TO BE INCLUDED | 19. *This Negotiated Agreement is Hereby Approved and Accepted for* |
|---|---|---|
| ☐ Hold Over<br>☒ Regular Support<br>☐ Seasonal Support<br>☐ Other | **UNSENTENCED**  **SENTENCED**<br>☒ Adult Male  ☒ Adult Male<br>☐ Adult Female  ☐ Adult Female<br>☐ Juvenile Male  ☐ Juvenile Male<br>☐ Juvenile Female  ☐ Juvenile Female<br>☒ Aliens  ☐ Work Release<br>  ☐ YCA Male<br>  ☐ YCA Female | THE UNITED STATES OF AMERICA<br>BY DIRECTION OF THE DIRECTOR OF THE UNITED STATES MARSHALS SERVICE<br><br>BY _____<br>*(SIGNATURE OF CONTRACTING OFFICER)* |
| 18. LEVEL OF USE<br>☐ Minimum<br>☐ Medium<br>☒ Major | | |

| 20. ANTICIPATED ANNUAL USAGE | | | | | 21. NAME OF AUTHORIZING OFFICIAL *(Type or Print)* | 22. DATE SIGNED |
|---|---|---|---|---|---|---|
| | UNSENTENCED | SENTENCED | ALIENS | TOTAL | | |
| No. of Prisoners | | | | | Vicki Lipov | / / |
| Prisoner Days | 60,000 | | | | | |
| Guard Hours | 2,500 | | | | | |

PRIOR EDITIONS ARE OBSOLETE AND ARE NOT TO BE USED

FORM USM-241 (Rev. 3/96)

**U.S. Department of Justice**

*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No.<br>38-99-0047 | *Page No.*<br>2 *of* 11 |
|---|---|---|

## ARTICLE I - PURPOSE AND SECURITY PROVIDED

The purpose of this Intergovernmental Service Agreement (IGA) is to establish a formal binding relationship between the United States Marshals Service (USMS) and other federal user agencies (the Federal Government) and Plymouth County (the Local Government) for the detention of persons charged with or convicted of violations of federal law or held as material witnesses (federal prisoners) at the Plymouth County Correctional Facility (the facility).

The Local Government agrees to accept and provide for the secure custody, care and safekeeping of federal prisoners in accordance with state and local laws, standards, policies, procedures, or court orders applicable to the operations of the facility. The USMS considers all federal prisoners medium/maximum security-type prisoners that are housed within the confines of the facility, at a level appropriate for prisoners considered a risk of flight, a danger to the community, or wanted by other jurisdictions.

## ARTICLE II - ASSIGNMENT AND CONTRACTING OF CATEGORICAL PROJECT-SUPPORTED EFFORT

1.   Neither this agreement nor any interest therein may be assigned or transferred to any other party without prior written approval by the USMS.

2.   None of the principal activities of the project-supported effort shall be contracted out to another organization without prior approval by the USMS. Where the intention to award contracts is made known at the time of application, the approval may be considered granted if these activities are funded as proposed.

3.   All contracts or assignments must be formalized in a written contract or other written agreement between the parties involved.

4.   The contract or agreement must, at a minimum, state the activities to be performed, the time schedule, the project policies, and the flow-through requirements that are applicable to the contractor or other recipient, other policies and procedures to be followed, the dollar limitation of the agreement, and the cost principles to be used in determining allowable costs. The contract or other written agreement must not affect the recipient's overall responsibility for the duration of the project and accountability to the government.

*Proof*

**U.S. Department of Justice**

*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No.<br>38-99-0047 | *Page No.*<br>_3_ of _11_ |
|---|---|---|

### ARTICLE III - MEDICAL SERVICES

1.    The Local Government agrees to provide federal prisoners with the same level of medical care and services provided to local prisoners, including the transportation and security for prisoners requiring removal from the facility for emergency medical services. All costs associated with hospital or health care services provided outside the facility will be paid directly by the Federal Government. In the event the Local Government has a contract with a medical facility/physician or receives discounted rates, the federal prisoners shall be charged the same rate as local prisoners.

2.    The Local Government agrees to notify the United States Marshal (USM) as soon as possible of all emergency medical cases requiring removal of a prisoner from the facility and to obtain prior authorization for removal for all other medical services required.

3.    When a federal prisoner is being transferred via the USMS airlift, he/she will be provided with three (3) to seven (7) days of prescription medication which will be dispensed from the detention facility. When possible, generic medications should be prescribed.

4.    Medical records must travel with the federal prisoner. If the records are maintained at a medical contractor's facility, it is the detention facility's responsibility to obtain them before a federal prisoner is moved.

5.    Federal prisoners will not be charged and are not required to pay their own medical expenses. These expenses will be paid by the Federal Government.

6.    The Local Government agrees to notify the USM as soon as possible when a federal prisoner is involved in an escape, attempted escape, or conspiracy to escape from the facility.

### ARTICLE IV - RECEIVING AND DISCHARGE

1.    The Local Government agrees to accept as federal prisoners those persons committed by federal law enforcement officers for violations of federal laws only upon presentation by the officer of proper law enforcement credentials.

2.    The Local Government agrees to release federal prisoners only to law enforcement officers of agencies initially committing the prisoner (i.e., DEA, INS, etc.) or to a Deputy USM. Those prisoners who are remanded to custody by a USM may only be released to a USM or an agent specified by the USM of the Judicial District.

3.    The Federal Government agrees to maintain federal prisoner population levels at or below the level established by the facility administrator.

**U.S. Department of Justice**

*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 38-99-0047 | Page No. 4 of 11 |
|---|---|---|

4.    Federal prisoners may not be released from the facility or placed in the custody of state or local officials for any reason except for medical emergency situations. Federal prisoners sought for a state or local court proceeding must be acquired through a Writ of Habeas Corpus or the Interstate Agreement of Detainers and then only with the concurrence of the District USM.

## ARTICLE V - PERIOD OF PERFORMANCE

This agreement shall be in effect indefinitely until terminated in writing by either party. Should conditions of an unusual nature occur making it impractical or undesirable to continue to house prisoners, the Local Government may suspend or restrict the use of the facility by giving written notice to the USM. Such notice will be provided thirty (30) days in advance of the effective date of formal termination and at least two (2) weeks in advance of a suspension or restriction of use unless an emergency situation requires the immediate relocation of prisoners.

## ARTICLE VI - PER DIEM RATE AND ECONOMIC PRICE ADJUSTMENT

1.    Per diem rates shall be established on the basis of actual and allowable costs associated with the operation of the facility during a recent annual accounting period.

2.    The Federal Government shall reimburse the Local Government at the per diem rate identified on page one (1) of this agreement. The rate may be renegotiated not more than once per year, after the agreement has been in effect for twelve (12) months.

3.    The rate covers one (1) person per "prisoner day". The Federal Government may not be billed for two (2) days when a prisoner is admitted one evening and removed the following morning. The Local Government may bill for the day of arrival, but not for the day of departure.

4.    When a rate increase is desired, the Local Government shall submit a written request to the USM at least sixty (60) days prior to the desired effective date of the rate adjustment. All such requests must contain a completed Cost Sheet for Detention Services (USM-243) which can be obtained from the USM. The Local Government agrees to provide additional cost information to support the requested rate increase and to permit an audit of accounting records upon request of the USMS.

5.    Criteria used to evaluate the increase or decrease in the per diem rate shall be those specified in the Office of Management and Budget (OMB) Circular A-87, Cost Principles for State, Local, and Indian Tribal Governments.

16

**U.S. Department of Justice**

*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No.<br>38-99-0047 | Page No.<br>5 of 11 |
|---|---|---|

6.   The effective date of the rate modification will be negotiated and specified on the IGA Modification form approved and signed by a USMS Contract Specialist. The effective date will be established on the first day of the month for accounting purposes. Payments at the modified rate will be paid upon the return of the signed modification by the authorized Local Government official to the USM.

ARTICLE VII - BILLING AND FINANCIAL PROVISIONS

1.   The Local Government shall prepare and submit original and separate invoices each month to the federal agencies listed below for certification and payment.

U. S. MARSHALS SERVICE
DISTRICT OF MASSACHUSETTS
1516 U.S. COURTHOUSE
CONGRESS & WATER STREETS
BOSTON, MA 02109
(617) 223-9721

U.S. MARSHALS SERVICE
DISTRICT OF RHODE ISLAND
303 U.S. COURTHOUSE
KENNEDY PLAZA
PROVIDENCE, RI 02901-1524
(401) 528-5300

IMMIGRATION AND NATURALIZATION SERVICE
EASTERN REGIONAL OFFICE
REGIONAL COMMISSIONER
70 KIMBALL AVENUE
S. BURLINGTON, VT 05403-6813
(802) 951-6428)

2.   To constitute a proper monthly invoice, the name and address of the facility, the name of each federal prisoner, their specific dates of confinement, the total days to be reimbursed, the appropriate per diem rate as approved in the IGA, and the total amount billed (total days multiplied by the rate per day) shall be listed. The name, title, complete address, and phone number of the local official responsible for invoice preparation should also be listed on the invoice.

3.   The Prompt Payment Act, Public Law 97-177 (96 stat. 85, 31 USC 1801), is applicable to payments under this agreement and requires the payment to the Local Government of interest on overdue payments. Determinations of interest due will be made in accordance with the provisions of the Prompt Payment Act and the Office of Management and Budget Circular A-125.

4.   Payment under this agreement will be due on the thirtieth (30th) calendar day after receipt of a proper invoice, in the office designated to receive the invoice. If the due date falls on a nonworking day (e.g., Saturday, federal holiday), then the due date will be

**U.S. Department of Justice**

*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 38-99-0047 | Page No. 6 of 11 |
|---|---|---|

the next working day. The date of the check issued in payment shall be considered to be the date payment is made.

NOTE: RATES NOT SPECIFIED IN THE AGREEMENT WILL NOT BE AUTHORIZED FOR PAYMENT.

ARTICLE VIII - SUPERVISION AND MONITORING RESPONSIBILITY

All recipients receiving direct awards from the USMS are responsible for the management and fiscal control of all funds. Responsibilities include the accounting of receipts and expenditures, cash management, the maintaining of adequate financial records, and the refunding of expenditures disallowed by audits.

ARTICLE IX - ACCOUNTING SYSTEMS AND FINANCIAL RECORDS

1.   The recipient shall be required to establish and maintain accounting systems and financial records that accurately account for the funds awarded. These records shall include both federal funds and all matching funds of state, local, and private organizations. State and local recipients shall expend and account for funds in accordance with state laws and procedures for expending and accounting for its own funds, as well as meet the financial management standards in 28 Code of Federal Regulations (CFR), Part 66, and current revisions of OMB Circular A-87.

2.   Recipients are responsible for complying with OMB Circular A-87 and 28 CFR, Part 66, and the allowability of the costs covered therein (submission of Form USM-243). To avoid possible subsequent disallowance or dispute based on unreasonableness or unallowability under the specific cost principles, recipients must obtain prior approval on the treatment of special or unusual costs.

3.   Changes in IGA facilities: The USMS shall be notified by the recipient of any significant change in the facility, including significant variations in inmate populations, which causes a significant change in the level of services under this IGA. The notification shall be supported with sufficient cost data to permit the USMS to equitably adjust the per diem rates included in the IGA. Depending on the size of the facility for purposes of assessing changes in the population, a 10% increase or decrease in the prison population shall be a "significant increase or decrease" for purposes of this subsection.

**U.S. Department of Justice**

*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No.<br>38-99-0047 | Page No.<br>7 of 11 |
|---|---|---|

## ARTICLE X - MAINTENANCE AND RETENTION OF RECORDS AND ACCESS TO RECORDS

1. In accordance with 28 CFR, Part 66, all financial records, supporting documents, statistical records, and other records pertinent to contracts or sub-awards awarded under this IGA shall be retained by each organization participating in the program for at least three (3) years for purposes of federal examination and audit.

2. The 3-year retention period set forth in paragraph one (1) above, begins at the end of the first year of completion of service under the IGA. If any litigation, claim, negotiation, audit, or other action involving the records has been started before the expiration of the 3-year period, the records must be retained until completion of the action and resolution of all issues which arise from it or until the end of the regular 3-year period, whichever is later.

3. Access to Records: The USMS and the Comptroller General of the United States, or any of their authorized representatives, shall have the right of access to any pertinent books, documents, papers, or other records of recipients or its sub-recipients/contractors, which are pertinent to the award, in order to make audits, examinations, excerpts, and transcripts. The rights of access must not be limited to the required retention period, but shall last as long as the records are retained.

4. Delinquent Debt Collection: The USMS will hold recipient accountable for any overpayment, audit disallowance, or any breach of this agreement that results in a debt owed to the Federal Government. The USMS may apply interest, penalties, and administrative costs to a delinquent debt owed by a debtor pursuant to the Federal Claims Collection Standards.

## ARTICLE XI - GOVERNMENT FURNISHED PROPERTY

1. It is the intention of the USMS to furnish excess federal property to local governments for the specific purpose of improving jail conditions and services. Accountable excess property, such as furniture and equipment, remains titled to the USMS and shall be returned to the custody of the USMS upon termination of the agreement.

2. The Local Government agrees to inventory, maintain, repair, assume liability for, and manage all federally provided accountable property as well as controlled excess property. Such property cannot be removed from the jail without the prior written approval of USMS Headquarters. The loss or destruction of any such excess property shall be immediately reported to the USM and USMS Headquarters. Accountable and controlled excess property includes any property with a unit acquisition value of $1,000 or more, all furniture, as well as equipment used for security and control, communication, photography, food service, medical care, inmate recreation, etc.

Form USM 241P (Rev. 3/02)

**U.S. Department of Justice**

*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 38-99-0047 | Page No. 8 of 11 |
|---|---|---|

3.   The suspension of use or restriction of bedspace made available to the USMS are agreed to be grounds for the recall and return of any or all government furnished property.

4.   The dollar value of property provided each year will not exceed the annual dollar payment made by the USMS for prisoner support unless a specific exemption is granted by the Chief, Prisoner Services Division, USMS Headquarters.

5.   It is understood and agreed that the Local Government shall fully defend, indemnify, and hold harmless the United States of America, its officers, employees, agents, and servants, individually and officially, for any and all liability caused by any act of any member of the Local Government or anyone else arising out of the use, operation, or handling of any property (to include any vehicle, equipment, and supplies) furnished to the Local Government in which legal ownership is retained by the United States of America, and to pay all claims, damages, judgments, legal costs, adjuster fees, and attorney fees related thereto. The Local Government will be solely responsible for all maintenance, storage, and other expenses related to the care and responsibility for all property furnished to the Local Government.

## ARTICLE XII - MODIFICATIONS/DISPUTES

1.   Either party may initiate a request for modification to this agreement in writing.  All modifications negotiated will be written and approved by a USMS Contracting Officer and submitted to the Local Government on form USM 241a for approval.

2.   Disputes, questions, or concerns pertaining to this agreement will be resolved between the USM and the appropriate Local Government official. Space guarantee questions along with any other unresolved issues are to be directed to the Chief, Prisoner Services Division.

## ARTICLE XIII - INSPECTION

The Local Government agrees to allow periodic inspections of the facility by USMS Inspectors. Findings of the inspection will be shared with the facility administrator in order to promote improvements to facility operations, conditions of confinement, and levels of services. The mandatory minimum conditions of confinement which are to be met during the entire period of the IGA agreement are:

1.   Adequate, trained jail staff will be provided 24 hours a day to supervise prisoners. Prisoners will be counted at least once on every shift, but at least twice in every 24-hour period. One of the counts must be visual to validate prisoner occupancy.

2o

**U.S. Department of Justice**

*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No. 38-99-0047 | Page No. 9 of 11 |
|---|---|---|

2. Jail staffing will provide full coverage of all security posts and full surveillance of inmates.

3. Jail will provide for three meals per day for prisoners. The meals must meet the nationally recommended dietary allowances published by the National Academy of Sciences.

4. Jail will provide 24-hour emergency medical care for prisoners.

5. Jail will maintain an automatic smoke and fire detection and alarm system, and maintain written policies and procedures regarding fire and other safety emergency standards.

6. Jail will maintain a water supply and waste disposal program that is certified to be in compliance with applicable laws and regulations.

<u>ARTICLE XIV - CONFLICT OF INTEREST</u>

Personnel and other officials connected with the agreement shall adhere to the requirements given below:

1. Advice. No official or employee of the recipient, a sub-recipient, or a contractor shall participate personally through decisions, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise in any proceeding, application, request for a ruling or other determination, contract, grant, cooperative agreement, claim, controversy, or other particular matter in which Department of Justice funds are used, where to his/her knowledge, he/she or his/her immediate family, partners, organization other than a public agency in which he/she is serving as an officer, director, trustee, partner, or employee, or any person or organization with whom he/she is negotiating or has any arrangement concerning prospective employment, has a financial interest, or less than an arms-length transaction.

2. Appearance. In the use of Department of Justice project funds, officials or employees of the recipient, a sub-recipient or a contractor, shall avoid any action which might result in, or create the appearance of:

   a. Using his or her official position for private gain;
   b. Giving preferential treatment to any person;
   c. Losing complete independence or impartiality;
   d. Making an official decision outside official channels; or
   e. Affecting adversely the confidence of the public in the integrity of the government or the program.

2 1

**U.S. Department of Justice**

*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | IGA No.<br>38-99-0047 | *Page No.*<br>10 of 11 |
|---|---|---|

## ARTICLE XV - GUARD/TRANSPORTATION SERVICES TO MEDICAL FACILITY

1.  The Local Government agrees, upon request of the Federal Government in whose custody a prisoner is held, to provide:

    a.  Transportation and escort guard services for federal prisoners housed at their facility to and from a medical facility for outpatient care, and

    b.  Transportation and stationary guard services for federal prisoners admitted to a medical facility.

2.  Such services will be performed by qualified law enforcement or correctional officer personnel employed by the Local Government under their policies, procedures, and practices. The Local Government agrees to augment such practices as may be requested by the USM to enhance specific requirements for security, prisoner monitoring, visitation, and contraband control.

3.  The Local Government will continue to be liable for the actions of its employees while they are transporting federal prisoners on behalf of the USMS. Further, the Local Government will also continue to provide workers' compensation to its employees while they are providing this service. It is further agreed that the local jail employees will continue to act on behalf of the Local Government in providing transportation to federal prisoners on behalf of the USMS.

4.  Furthermore, the Local Government agrees to hold harmless and indemnify the USMS and its officials in their official and individual capacities from any liability, including third-party liability or workers' compensation, arising from the conduct of the local jail employees during the course of transporting federal prisoners on behalf of the USMS.

5.  The Federal Government agrees to reimburse the Local Government at the rate stipulated on page one (1) of this agreement.

## ARTICLE XVI - GUARD/TRANSPORTATION SERVICES TO U.S. COURTHOUSE

1.  The Local Government agrees upon request of the USM in whose custody a prisoner is held, to provide transportation and escort guard services for federal prisoners housed at their facility to and from the U.S. Courthouse. The Local Government agrees to the following:

22

**U.S. Department of Justice**

*United States Marshals Service*

| Intergovernmental Service Agreement Schedule | ICA No. 38-99-0047 | Page No. 11 of 11 |
|---|---|---|

b2

   a. Transportation and escort guard services will be performed by  qualified officers employed by the Local Government under their policies, procedures, and practices, and will augment such practices as may be requested by the USM to enhance specific requirements for security, prisoner monitoring, and contraband control;

   b. Upon arrival at the courthouse, transportation and escort guards will turn federal prisoners over to Deputy U.S. Marshals only upon presentation by the deputy of proper law enforcement credentials;

   c. The Local Government <u>will not</u> transport federal prisoners to any U.S. Courthouse without a specific request from the USM who will provide the prisoner's name, the U.S. Courthouse, and the date prisoner is to be transported.

2.  Each prisoner will be restrained in handcuffs, waist chains, and leg irons during transportation.

3.  Such services will be performed by qualified law enforcement or correctional officer personnel employed by the Local Government under their policies, procedures, and practices. The Local Government agrees to augment such practices as may be requested by the USM to enhance specific requirements for security, prisoner monitoring, visitation, and contraband control.

4.  The Local Government will continue to be liable for the actions of its employees while they are transporting federal prisoners on behalf of the USMS. Further, the Local Government will also continue to provide workers' compensation to its employees while they are providing this service. It is further agreed that the local jail employees will continue to act on behalf of the Local Government in providing transportation to federal prisoners on behalf of the USMS.

5.  Furthermore, the Local Government agrees to hold harmless and indemnify the USMS and its officials in their official and individual capacities from any liability, including third-party liability or workers' compensation, arising from the conduct of the local jail employees during the course of transporting federal prisoners on behalf of the USMS.

6.  The Federal Government agrees to reimburse the Local Government at the rate specified on page one (1) of this agreement.

Exhibit B

PLYMOUTH COUNTY
SHERIFF'S DEPARTMENT

PLYMOUTH COUNTY
CORRECTIONAL FACILITY

## INMATE ORIENTATION BOOKLET : SECTION 1 GENERAL INFORMATION

### CONTRABAND

1. Contraband at the Plymouth County Correctional Facility is considered to be any item not authorized for retention by an inmate, any item not belonging to the inmate, any item left behind by an inmate, any item which has been altered or is not in it's original state, any item which cannot be bought through the facilities canteen service, any item which is not allowed into the facility through the property department, any items in excess of allowable amounts.
2. Any item that is misused or not used as it was intended may be considered contraband.
3. Any inmate in possession of contraband is subject to disciplinary action.

### DISCIPLINE

1. Rules and regulations have been established for the well-being of all staff and inmates.
2. All rules and regulations will be strictly enforced.
3. Inmates who violate rules and regulations will be subject to disciplinary action including, but not limited to, warnings, verbal reprimands, confinement to room, loss of privileges, extra work details, and / or disciplinary detention.

### EARNED GOOD TIME

1. Sentenced inmates may be eligible to reduce their sentence for a combination of working or participating in various educational, enrichment, vocational or rehabilitative program(s).
2. Inmates may receive a maximum of seven and one-half (7 1/2) days per month. Up to two and one half (2 1/2) days for educational, up to two and one half (2 1/2) days for an enrichment program (s) and up to two and one half (2 1/2) days for working.
3. Earned Good Time DOES affect institutional discharge.
4. Trial Inmates are not eligible to receive Earned Good Time reductions.
5. Inmates with questions and concerns about Earned Good Time may sign up to speak to their Caseworker.

### FIRE & OTHER EMERGENCIES

1. In case of any emergency, fight, fire, medical Emergency you will go to your room immediately and lock yourself in. Do not wait to be told to do so.
2. If for some reason you are unable to get to your room, if there is a disturbance between you and your room, for example, you must move as far as possible from the disturbance area, sit quietly on the floor and wait until advised by a staff member to move to another location.
3. If you are able to get to your room, but it is locked, you must stand by your door until it is opened for you.
4. All inmates in dormitories will report to their bunk area.
5. Inmates will follow the directions of the unit officer.
6. Failure to comply will result in disciplinary action.

### FURLOUGH

1. Only emergency escorted furloughs will be considered.
2. Requests for emergency furlough must be brought to the attention of the Unit Officer or Caseworker.

### GRIEVANCES

1. The inmate grievance procedure for the facility is in place to assist in the resolution of issues brought forward.
2. A grievance form is available through the unit officer, and should only be filed after the inmate has utilized every other remedy available to resolve an issue.
3. Inmate grievances must be completed by an inmate on behalf of himself. Group grievances are not accepted.
4. Grievances, regardless of content, are to be forwarded to the unit ADS for review.

**Plymouth County Sheriff's Department**                                                 **Plymouth County Correctional Facility**

## Inmate Grievance Form
### PCCF 491 Attachment 1

| Instructions | Las Instrucciones |
|---|---|
| 1. Print or write legibly all of the requested information, you must sign and date the form to ensure timely review. | 1. Impresión o escribe toda la información pedida legiblemente, usted debe firmar y debe fechar el formulario para asegurar la revisión oportuna. |
| 2. Each Form must contain only one (1) Grievance | 2. Cada Formulario debe contener único (1) el Agravio |
| 3. Grievances will not be accepted on behalf of a group, filed by a group or on behalf of another inmate. | 3. No se aceptarán los agravios en nombre de un grupo, archivó por un grupo o en nombre de otro preso. |
| 4. Forward this form to the Unit ADS who will review, answer and / or forward in accordance with established procedures | 4. Delantero este formulario a los ADS de la Unidad que repasarán, respuesta y / o delantero de acuerdo con los procedimientos establecidos |

### Inmate Section : La Sección del preso

Aggrieved:
Apenado: _____    ID #: _____    Unit / Room#:
La unidad / el Cuarto #: _____

Caseworker's Name
El Nombre de asistente social _____    Date of Occurance
La fecha de Occurance _____

Statement of Facts:
La declaración de Hechos: _____
_____
_____
_____

Remedy Requested:
El remedio Pidió: _____
_____

| | | | | |
|---|---|---|---|---|
| Have you spoken with your caseworker?<br>¿Usted ha hablado con su asistente social? | ☐ Yes  ☐ No | If yes, with whom?<br>Si sí con quien? | _____ | |
| When?<br>Cuando? _____ | | Results:<br>Resulta? | _____ | |
| Have you spoken with anyone else?<br>¿Usted ha hablado con nadie más? | ☐ Yes  ☐ No | If yes, with whom?<br>Si sí con quien? | _____ | |
| When?<br>Cuando? _____ | | Results:<br>Resulta? | _____ | |

Inmate's Signature:
La Firma de preso: _____    Date:
Fecha: _____

### Unit ADS' Section

Date Grievance Received: _____    Form accepted for review:  ☐ Yes    ☐ No

If No explain: _____

If form is not accepted, the inmate must be properly advised on completing the grievance. Forward this form to the IGC.

Results of ADS' Inquiry:    Was the grievance resolved ?  ☐ Yes  ☐ No    Explain in detail the results and solution given or recommended

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Unit ADS' Signature: _____    Date: _____

| **IGC SECTION** |
|---|

IGC's Name: _____    Date Grievance Received: _____

Form Accepted for Review:    ☐ YES    ☐ NO    If no, explain reason(s) for rejection: _____

_____

Results of Unit IGC's Inquiry: _____

_____

_____

_____

## GRIEVANCE RESULTS : LOS RESULTADOS DE AGRAVIO

☐ APPROVED    If approved, describe resolution:
APROBADO    Si aceptado, describa la resolución: _____

_____

_____

☐ DISAPPROVED    If disapproved, describe reasons:
DESAPROBADO    Si desaprobó, describa las razones: _____

_____

_____

IGC Signature: _____    Date: _____

| **Notice to Inmate : El aviso al Preso:** |
|---|

You have ten (10) working days to appeal the decision rendered by the IGC. You must submit an appeal, in writing, to the Deputy Superintendent. Check the appropriate box below and return this form to the IGC.
Usted tiene diez (10) los días activos para apelar la decisión dada por el IGC. Usted debe someter una apelación, por escrito, al Diputado Superintendent. Verifique la caja apropiada debajo y devuelva este formulario al IGC.

☐ I _do_ intend to appeal the decision rendered.    ☐ I _do not_ intend to appeal the decision rendered.
Yo pienso apelar la decisión dada.    Yo no pienso apelar la decisión dada.

Inmate's Signature:    Date:
La Firma de preso: _____    Fecha: _____
(Inmate's Full Name : El Nombre Lleno de preso)

| **Deputy Superintendent's Decision of Appeal** |
|---|

Date received: _____

The IGC's decision is: La decisión del IGC es:    ☐ AFFIRMED    AFIRMADO

☐ MODIFIED    MODIFICADO

The Appeal is: La Apelación es:    ☐ DENIED    NEGADO

COMMENTS / CORRECTIVE ACTION TO BE TAKEN: _____

_____

_____

**Deputy Superintendent's Signature:** _____    **Date:** _____

Exhibit C

March 4, 2004

Grant Boyd
ID # 39233
Unit A1

Dear Mr. Boyd,

I will send your letters to ADS Neri, your unit manager, for review and a response.

Sincerely,

Brian H. Gillen
Deputy Superintendent

cc:    ADS Neri

Exhibit D

FOR THE DISTRICT OF MASSACHUSETTS

|                     |             | C.A. No. 05-10873-RWZ |
|---------------------|-------------|------------------------|
| GRANT BOYD,         | )           |                        |
|                     | )           |                        |
|          Plaintiff, | )           |                        |
|                     | )           |                        |
| V.                  | )           |                        |
|                     | )           |                        |
| MIKE AUSTIN, et al. | )           |                        |
|                     | )           |                        |
|          Defendants.| )           |                        |

## DEFENDANTS' KATHLEEN DENNEHY, RHIANNA KOHL AND EDWARD O'DONNELL'S MOTION FOR SEPARATE AND FINAL JUDGMENT

Now comes defendants, Kathleen Dennehy, Rhianna Kohl and Edward O'Donnell, in the above-entitled action, and hereby moves this Honorable Court to enter Separate and Final Judgment for defendants, Kathleen Dennehy, Rhianna Kohl and Edward O'Donnell. Defendants make this request pursuant to Federal Rule of Civil Procedure 54 (b). As grounds, the above-entitled defendants state that plaintiff has withdrawn his claims against them. See Plaintiff's Motion to Amend the Complaint filed with this Court on May 12, 2005. Plaintiff indicates in the motion that he has withdrawn suit against some defendants. The amended complaint lists the parties in the action and the above-entitled defendants have been omitted. Moreover, the amended complaint lacks any claims against any of the

above-entitled defendants, nor does it seek any claims for relief against them.

WHEREFORE, defendants respectfully request that this Honorable Court enter Separate and Final Judgment for defendants Kathleen Dennehy, Rhianna Kohl and Edward O'Donnell.

Respectfully submitted,

NANCY ANKERS WHITE
Special Assistant Attorney General

Date:  May 23, 2005        /s/Kevin Anahory
                           Kevin A. Anahory, Counsel
                           BBO #564002
                           Department of Correction
                           Legal Division
                           70 Franklin Street, Suite 600
                           Boston, MA 02110-1300
                           (617) 727-3300 x 125

Exhibit E

# COMMONWEALTH OF MASSACHUSETTS

## DEPARTMENT OF CORRECTION

### INMATE GRIEVANCE FORM

### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| | | | | | | |
|---|---|---|---|---|---|---|
| **Name** | BOYD GRANT | | **Grievance#** 9945 | **Institution** MCI CEDAR JUNCTION | | |
| **Commit No.** | A93192 | **Housing** BLOCK 4 | | **Date Of Incident** 20050321 | **Date Of Grievance** | 20050423 |

| | |
|---|---|
| **Complaint** | (see attached)  Due to obsticals placed in my way by MCI-Walpole staff I am withdrawing my law suit. |
| **Remedy Requested** | Notification of my motion to withdraw my law suit against the DOC and P.C.S.D. Please notify Superintendent, Mail Officer IPS Chapman and Unit Team |
| **Staff Recipient** | Sullivan Daniel    CO II |
| **Staff Involved** | |
| **Signature** | |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

| | | |
|---|---|---|
| **Date Received** 20050425 | **Decision Date** 20050426 | |
| **Signature** | Sullivan Daniel    CO II | |
| **Final Decision** | DENIED | |

| | |
|---|---|
| **Decision** | Please understand that the role of the IGC is to provide a forum for the fair, impartial resolution of legitimate inmate complaints at the facility level.  As a result, your grievance appears to be a request to have the IGC make notifications to DOC and Court officials concerning matters related to your legal disposition and is denied.  Thank you. |
| **Signature** | **Date** 4/26/05 |

Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### INMATE RECEIPT

| | | | | |
|---|---|---|---|---|
| **Name** | BOYD GRANT | | **Institution** MCI CEDAR JUNCTION | |
| **Commit No.** | A93192 | **Grievance#** 9945 | **Date Received** | 20050425 |
| **Signature.** | Sullivan Daniel    CO II | | | |

34

Exhibit F

164 Springdale Avenue
Wheeling, WV 26003
April 25, 2005

Mr. Adam Baler, Clerk
Plymouth County Superior Court
Court Street
Plymouth, MA 02360

RE: PLCV 2005-00310
    Motion to Withdraw Civil Action

Dear Mr. Baler:

I, the plaintiff, hereby plead with the Court to withdraw the above-mentioned civil action.

I have been denied access by MCI Walpole to my criminal attorney for nineteen (19) days,
where he is now unable to assist me on a 427 hearing in Federal Court.

My personal attorney was prevented from taking a taped deposition for my criminal
attorney.

My legal mail is not being processed and I have little access to the law library.

I fear if I do not withdraw my civil action against the defendant it will cause irreparable
harm to my criminal case and my safety until I am moved out of MCI Walpole and away
from the control of the defendant.

FOR GRANT BOYD

*Mary Elizabeth Boyd 4/25/05*

Mary Elizabeth Boyd
164 Springdale Avenue
Wheeling, WV 26003
(304) 243-4717

Grant Boyd
P. O. Box 100
South Walpole, MA 02071

Enclosure: Note of explanation from Mary Elizabeth Boyd

# Commonwealth of Massachusetts
## Plymouth County Superior Court
### Courthouse
### Court Street
### Plymouth, MA 02360

CIVIL DOCKET# **PLCV2005-00310**

RE:   **Boyd v Austin et al**

TO: Mary Boyd
164 Springdale Avenue
Wheeling, WV 26003

## NOTICE OF RETURNED PLEADING

The attached paper was not accepted for entry on the docket of the above referenced case and is being returned for the reason stated below:

**Pleading, Pltff's motion to withdraw civil action, returned to Mary Boyd: This motion must be signed by your son, Grant Boyd**

Dated at Plymouth, Massachusetts this 3rd day of May, 2005.

Francis R. Powers,
Clerk of the Courts

Exhibit    C

RECEIVED
MAY  3 2005
PLYMOUTH SUPERIOR COURT

Plymouth County Superior Court
ADAM BAUER
Court STREET
Plymouth Ma  02360

RE:  PLCV2005-00310
     Boyd v. Austin Et Al.

         Motion to WithDraw Civil
         Action With Exception

Please ask the court to rule on this Motion
to Terminate Civil Action PLCV2005-00310.

Since My Transfer, by the Defendants, to
MCI - CEDAr Junction Walpole I hAVE BEEN
Prevented from Sending Mail relating to this
Action. I WAS Prevented For 19 DAys
from Engaging with My LAWyEr to Prepare
for My criminal CAse in FEDEral Court, My
Phone Access WAS Not Functioning, according

to the Subordinates of the Doc Defendants
Who run Walpole (MCI-CEDAR Junction). I Truly
FEEL MY CRIMINAL CASE will BE HARMED
iF I CONTINUE this Suit.

All My CLAIMS Arc DOCUMENTED and will
be USSO iN NEW Litigation iF these issues
Do Not ~~Resolv~~ RESOLVE, therefore I BEg the
Court to Accept the TERMINATION OF This
Civil Action but Make Note it is DONE
With EXECPTION.

RESPECTFULly Submitted

Grant Boyd, Pro-SE
Po Box 100
S. Walpole Ma 02071

4/28/05

40

Exhibit     H

AFFIDAVIT IN SUPPORT OF EX PARTE

INJUNCTION  CA. NO.  05-10873-RWZ

The Below NAMED DETAINEES Agree With the
STATEMENTS Contained in this Agre AFFIDAVIT
relating to Conditions AT MCI CEDAR JUNCTION
Walpole AND ASK For the court to grant
the INJUNCTION to Compell the USMS to
Conduct A Facility INSPECTION.

(1)  Since April 19, 2005 the Temp. in CELL
    Block 4 has ranged Between 45°- 65° F

(2)  Clothing issue has not been Adequate
    to Compensate For Living Conditions

(3)  DETAINEES Without Money have Been DENIED
    ToothPASTE AND RAZORS.

| ITEMS IN Agreement | NAME | ID | Signature | DATE |
|---|---|---|---|---|
| 1, 2, 3 | GRANT Boyd | A93192 |  | 5/25/05 |
| 1, 2, 3 | KEITH BENSMAN | A93718 |  | 5·25·05 |
| 1 2 3 | Richard Collado | A93537 | Richard Collado | 5/25/05 |
| 1, 2, 3 | Carlos Rodriguez | A93799 |  | 5/25/05 |
| 1, 2, 3 | Michael Crooker | A93840 |  | 05/25/05 |
| 1 |  | A93714 |  | 5/25/05 |
| 1, 2, 3 | Jamal Clarke | A93500 |  | 5/25/05 |
| 1 2 3 | Julio Castillo | A93535 | Julio Castillo |  |

I, Grant Boyd ATTEST UNDER PAIN OF
PERJury that All individuals Signing this
AFFIDAVIT PRESENTED their INMATE ID
For VERIFICATION prior to Signing.

                                         5/25/05
PO Box 100
S. WALPOLE MA 02071   Grant Boyd, Pro-SE

Continuation of Signatures
For Affidavit in Support
of Ex Parte Injunction
CA No. 05-10873-RWZ

| Items of Agreement | Name | ID | Signature | Date |
|---|---|---|---|---|
| 1,2,3 | Daniel Molina | A87046 | Daniel Molina | 5-25-05 |

43